NEISWENDER, ADMRX., APPELLEE, *v.* EDINGER ET AL., APPELLANTS.

(No. L-77-033—Decided March 3, 1978.)

*Gallon, Kalniz & Iorio Co., L. P. A.,* and *Mr. David Zoll,* for appellee.

*Mr. Sheldon M. Rosen* and *Mr. William H. Bracy,* for appellants.

*Per Curiam.* This is an appeal from a judgment entered in the Court of Common Pleas of Lucas County, pursuant to a jury verdict awarding plaintiff damages totaling $250,000.

On July 18, 1972, in a tavern known as "The Apartment Lounge," an off-duty Toledo policeman, Lawrence Edinger, shot and mortally wounded Thomas Neiswender. The handgun used by Edinger was being carried pursuant to Rule 11, Rules and Regulations of the Toledo Police Department. This rule required off-duty officers to carry handguns.

Consequently, the victim's widow, plaintiff Bette Neiswender, filed suit against Lawrence Edinger, William Shults (owner of the tavern), the city of Toledo, Donald Shanteau (individually and in his capacity as city safety director), and Robert Duck (individually and in his capacity as Chief of the Toledo Police Department).

As a result of a motion to dismiss made prior to trial, defendants the city of Toledo, Donald Shanteau and Robert Duck were dismissed from the suit.

Such dismissal was appealed to this court, resulting in an affirmance of the lower court's dismissal of the city of Toledo, but a reversal of the dismissal of Donald Shanteau and Robert Duck.

Upon remand, the cause was tried to a jury, which returned a verdict in favor of defendant Donald Shanteau but against defendant Robert Duck. Damages were assessed at $250,000.

From that judgment, defendant Duck now appeals.

Defendant presents four assignments of error, merged into one argument. The first two assignments are framed thusly:

"The trial court errored [*sic*] in overruling Defendant-Appellant's Motion for Directed Verdict at the close of the Plaintiff-Appellee's evidence, for the reason that there was no testimony or other evidence adduced from which the jury could have found abuse of discretion, and Defendant-Appellant was entitled to judgment as a matter of law.

"The trial court errored [*sic*] in overruling Defendant-Appellant's Motion for Directed Verdict at the close of the Plaintiff-Appellee's evidence, for the reason that there was no testimony or other evidence adduced from which the jury could have found proximate cause, and Defendant-Appellant was entitled to judgment as a matter of law."

It is well established that a defendant who moves for a directed verdict at the close of the plaintiff's evidence and subsequently introduces his own evidence, must, in order to preserve an error for appeal, renew the motion at the conclusion of all evidence. *McKellips* v. *Indus. Comm.* (1945), 145 Ohio St. 79; *Miller* v. *U. S. Fidelity & Guaranty Co.* (1933), 16 Ohio Law Abs. 508; *Toledo* v. *Creighton* (1934), 18 Ohio Law Abs. 332.

The record herein discloses that defendant failed to renew his motion for a directed verdict at the conclusion of all the evidence. Such failure constitutes a waiver; thus, the questions raised by assignments of error 1 and 2 are not properly before this court for review.

Assignments of error 1 and 2 are not well taken.

Assignment of error 3 is, to wit:

"The trial court errored [*sic*] in overruling Defendant-Appellant's alternative Motion for Judgment N. O. V. or New Trial for reason that Defendant-Appellant was entitled to judgment as a matter of law on the issue of whether Defendant-Appellant abused his discretion."

A review of the record presented on appeal indicates that in December 1970 Patrolman Lawrence Edinger was accused of making a threatening gesture and remark to a tow-truck company employee who refused to release Edinger's automobile. Acting in his capacity as assistant chief of

the Toledo Police Department, defendant Robert Duck initiated a telephone conversation with the employee, pursuant to the citizen's complaint concerning Edinger's conduct. The complaining party informed Duck that she would not testify against Edinger and that she no longer wished to pursue the matter. Consistent with both the limits of his authority as an assistant chief and then-existing department policy, Duck took no further action against the patrolman.

Defendant became chief of police in 1971. In July 1972, while off-duty and intoxicated, Lawrence Edinger shot and killed Thomas Neiswender in a tavern.

The doctrine of extending official immunity to executive officers was established in *Spalding* v. *Vilas* (1896), 161 U. S. 483. However, for various reasons the common law has not developed a tradition of official immunity for police officers. See Note, *Official Immunity in Ohio: How to Sue the King's Men*, 43 Cinn. L. Rev. 557, 580-81 (1974); *Davis, Administrative Officers' Tort Liability*, 55 Mich. L. Rev. 201, 213 (1956).

The traditional police activities to which official immunity is rarely extended are not at issue herein. The acts upon which plaintiff bases her claim of abuse of discretion— to wit, failure to pursue a citizen complaint and failure to institute standards of review—are administrative and discretionary in nature, and such discretionary acts are of a type to which official immunity is normally extended.

The protection afforded by the doctrine of official immunity is not absolute. An Ohio public officer (such as defendant herein) whose official acts are considered discretionary may be held liable if it can be shown that, in the performance of such acts, he was malicious or abused his discretion. *State* v. *Bair* (1905), 71 Ohio St. 410; *Thomas* v. *Wilton* (1884), 40 Ohio St. 516; *Gregory* v. *Small* (1883), 39 Ohio St. 346; *Zimbleman* v. *Atkinson* (1948), 54 Ohio Law Abs. 47.

In the case *sub judice*, there is no contention that defendant Robert Duck acted maliciously. Thus, we are concerned only with the question of abuse of discretion.

As stated in 2 Ohio Jurisprudence 3d 385, Administrative Law, Section 176:

"Discretion may be said to be abused where the action complained of has been arbitrary or capricious or based on personal, selfish, or fraudulent motives, or on false information, or has been taken under total lack of authority to act, where it amounts to evasion of a positive duty, * * *.

"The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies an unreasonable, arbitrary, or unconscionable attitude. * * *

"An act which is in accordance with the law cannot be deemed an abuse of discretion. * * *"

Courts in this State have been reluctant to find abuse of discretion. See *State, ex rel. Aller & Sharp, Inc.,* v. *Taylor* (1940), 32 Ohio Law Abs. 461; *Grove* v. *Bd. of Education* (1934), 18 Ohio Law Abs. 52; *State, ex rel. Evans,* v. *J. A. Swingle Contracting Co.* (1913), 15 N. P. (N. S.) 279.

At the time of the above-mentioned citizen's complaint, defendant Robert Duck was not chief of police. He was an assistant chief with specific responsibilities, one of which was to investigate those citizen complaints brought to his attention. In December 1970, he did, in fact, investigate the citizen complaint against Lawrence Edinger. That investigation was discontinued, not through any lack of zeal on the part of Duck, but because of the complainant's refusal to pursue the matter. Uncontroverted testimony indicates that, pursuant to then-existing regulations, such refusal necessitated termination of the investigation.

Further, the evidence herein does not establish the existence, on or prior to July 18, 1972, of compulsory national standards for the hiring and periodic review of police officers. While some standards appear to have been proposed by the International Association of Chiefs of Police, they were of an advisory nature only. The city of Toledo had not adopted these proposed standards and there is no evidence that other cities of comparable size had done so. Defendant Robert Duck did not fail to perform his duties pursuant to then-existing Toledo Police Department rules and regulations.

The plaintiff contends, however, that Duck should have pursued the above-mentioned citizen complaint beyond the limits of his authority and should also have instituted the above-mentioned standards. While we agree that such action on the part of Robert Duck would have been desirable, the absence of such initiative in the context of then-existing circumstances falls far short of constituting an abuse of discretion, as that term has been defined above.

We find, after construing the evidence most strongly in favor of the plaintiff, that reasonable minds could come to but one conclusion on the issue of abuse of discretion and that conclusion is adverse to the plaintiff.

We note, also, the standard for official immunity enunciated in *Scheuer* v. *Rhodes* (1974), 416 U. S. 232, a case involving the 1970 Kent State University shootings. *Scheuer* was a civil action brought under Section 1983, Title 42, U. S. Code, and, while not controlling in the case *sub judice,* a portion of that opinion is instructive:

"* * * [I]n varying scope, a qualified immunity is available to officers of the executive branch of government, the variation being dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all circumstances, coupled with good-faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct. * * *" (Page 247.)

Applying the facts herein to the above-mentioned standards, we conclude that defendant's questioned actions fell within the scope of official immunity.

Assignment of error 3 is well taken. Defendant's motion for a judgment n. o. v. should have been granted.

Assignment of error 4 is presented, to wit:

"The verdict of the jury is contrary to fact and the manifest weight of the evidence in that there was no showing of abuse of discretion and the jury's verdict is the result of passion and prejudice."

Having found assignment of error 3 well taken, we find this fourth assignment moot.

On consideration whereof, this court finds that substantial justice has not been done the party complaining. The judgment of the Court of Common Pleas for Lucas County is reversed.

*Judgment reversed.*

POTTER, P. J., CONNORS and WILEY, JJ., concur.

WILEY, J., retired, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.