**MOBBERLY, Appellee,**

v.

**HENDRICKS, Appellant.**

[Cite as *Mobberly v. Hendricks* (1994), 98 Ohio App.3d 839.]

Court of Appeals of Ohio,
Medina County.

No. 2317–M.

Decided Nov. 30, 1994.

840

*Stephen Brown,* for appellee.

*Connie Gent Hendricks, pro se.*

QUILLIN, Judge.

Defendant-appellant, Connie Gent Hendricks, appeals from a jury verdict awarding the plaintiff-appellee, Jane Shook Mobberly, $35,000 on her legal malpractice action and from the trial court's award of prejudgment interest to the plaintiff. We affirm.

The case arises out of attorney Hendricks's representation of Mobberly in a divorce action. Mobberly employed Hendricks as her legal counsel to obtain a divorce from her husband, Philip Shook. Hendricks had been a practicing attorney for approximately two years before taking Mobberly's case and had worked on approximately twenty-four cases involving the termination of marriages. Mobberly and Shook had brought substantial assets into the marriage. Additionally, prior to the marriage, Shook executed a promissory note in favor of Mobberly for $35,000 at six percent interest. The note was originally to become due on or before January 6, 1977. After the couple was married, the note was revised to include a January 6, 1992 due date. No interest was ever paid on the note either before or after the marriage terminated.

Attorney Hendricks filed a complaint on behalf of Mobberly, seeking a divorce from Shook. Prior to trial, Shook filed a motion for temporary alimony with the court. Hendricks did not file a counteraffidavit on behalf of Mobberly. The court entered a default order in favor of Shook, awarding him $80 per week in temporary alimony. Hendricks filed a motion to the court to reconsider its temporary alimony order, which was denied.

Before the case went to trial, the parties signed a separation agreement. The terms of the separation agreement provided that the parties were to keep items brought into the marriage and that the couple's farmhouse would be sold and the profit divided equally. Neither party was obligated to pay alimony under the agreement. The separation agreement did not provide for Mobberly's collection on the $35,000 promissory note.

After the separation agreement was approved by the domestic relations court and the marriage dissolved, Shook continued to receive alimony payments, which were withheld from Mobberly's paycheck. Upon the urging of Mobberly, Hendricks eventually caused the withholding to be discontinued by March 21, 1990. Mobberly continued to telephone Hendricks regarding legal representation. In early October 1990, Hendricks informed Mobberly that she was no longer engaged in private practice and directed Mobberly to other attorneys. Mobberly employed attorney Bruce Parrish. Parrish, in turn, recommended the services of attorney Stephen Brown to Mobberly. Mobberly hired Brown, who filed a complaint in Medina County Common Pleas Court against Shook for collection on the promissory note. Shortly thereafter, Shook filed a notice of bankruptcy and the note was discharged.

On April 11, 1991, Mobberly filed a complaint in the Medina County Court of Common Pleas against Hendricks, alleging legal malpractice. The case proceeded to a jury trial, wherein attorney Hendricks represented herself. The jury returned a $35,000 verdict in favor of Mobberly. The trial court judge issued a journal entry, journalizing the jury's verdict and awarding prejudgment interest in favor of Mobberly. Hendricks appeals from the jury's verdict and the trial court's award of prejudgment interest, asserting four assignments of error.

### Assignment of Error I

"The trial court's failure to find the action barred by the statute of limitations is contrary to law and against the manifest weight of the evidence."

At the close of the plaintiff's evidence, Hendricks moved the trial court to dismiss the case based on the fact that the action was not commenced within the applicable statute of limitations period. The trial court overruled appellant's motion, stating that a contested issue of fact existed as to when the attorney-client relationship terminated.

"Under R.C. 2305.11(A), a cause of action for legal malpractice accrues and the one-year statute of limitations commences to run either when the client discovers or, in the exercise of reasonable diligence should have discovered, the resulting damage or injury, or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later." *Omni–Food & Fashion, Inc. v. Smith* (1988), 38 Ohio St.3d 385, 528 N.E.2d 941, paragraph one of the syllabus.

From the testimony offered at trial, the date when the attorney-client relationship terminated is disputed. While plaintiff's trial attorney stipulated that Hendricks caused the withholding order to be discontinued by March 21, 1990, and that the plaintiff employed a new attorney on October 3, 1990, there was a factual question as to whether an attorney-client relationship continued until

October 3, concerning the particular undertaking for which Hendricks was employed.

The plaintiff testified that she repeatedly telephoned Hendricks until October 1990, when Hendricks informed plaintiff that she was no longer in private practice and referred the plaintiff to another attorney. As stated by the Tenth District Court of Appeals in *Columbus Credit Co. v. Evans* (1992), 82 Ohio App.3d 798, 613 N.E.2d 671:

"[T]he attorney-client relationship is consensual, subject to termination by acts of either party. See *Brown v. Johnstone* (1982), 5 Ohio App.3d 165, 166–167 [5 OBR 347, 348–350, 450 N.E.2d 693, 694–696]. A client may terminate the relationship at any time. *Ross v. Woyan* (1980), 1 Ohio App.3d 39, 41 [1 OBR 3, 5–6, 439 N.E.2d 428, 430]. However, an attorney is not free to withdraw from the relationship absent notice to his client and, if required by the rules of court where the attorney is representing the client, permission from the court. DR 2–110A. The point at which the relationship is terminated is a factual question to be resolved by the trier of fact. *Muir v. Hadler Real Estate Mgmt. Co.* (1982), 4 Ohio App.3d 89, 90–92 [4 OBR 170, 171–173, 446 N.E.2d 820, 822–824]."

In determining when the attorney-client relationship is terminated, the court must point to an affirmative act by either the attorney or the client that signals the end of the relationship. *Mastran v. Marks* (Mar. 28, 1990), Summit App. No. 14270, unreported, 1990 WL 34845. For a trial court to take this issue away from a jury, such an act must be clear and unambiguous. *Id.*

Although it is clear that by March 21, 1990, the divorce proceedings were completed and Hendricks had filed the last document that she would file with respect to that proceeding, there is a question of fact as to whether an attorney-client relationship continued to exist between Mobberly and Hendricks regarding collection on an outstanding promissory note between the plaintiff and her ex-husband. Both Hendricks and the plaintiff testified that they had discussed whether to seek collection of the note through the divorce proceedings and that they ultimately agreed to forgo collection on the note until its date of maturation. Additionally, the plaintiff testified that she continued to call Hendricks regarding legal representation up until October 1990, when Hendricks informed the plaintiff that she was no longer engaged in private practice. While it is arguable that the attorney-client relationship was terminated prior to October 1990, there clearly were no unambiguous acts demonstrating termination of the relationship. Accordingly, it was not error for the trial court to allow the issue to go to the jury.

Appellant next asserts that it was error for the trial court to fail to charge the jury on the statute of limitations issue. Civ.R. 51(A) states in pertinent part:

"On appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection."

█ Hendricks raised no objections to the court's jury instructions before the jury retired for deliberations. When asked by the trial court judge if she had any objections, Hendricks merely requested admission of the exhibits marked at trial. Because Hendricks failed to object to the court's failure to instruct the jury on the statute of limitations question, she is precluded from raising the issue on appeal.

Appellant's first assignment of error is overruled.

### Assignment of Error II

"The trial court's failure to dismiss upon defendant-appellant's motion and refusal to permit evidence of 'suit within a suit' is contrary to law and against the manifest weight of the evidence."

█ Appellant claims that it was error for the trial court to fail to dismiss the case upon her motion at the close of the plaintiff's case. At the close of the plaintiff's case, appellant argued that Mobberly had failed to produce any evidence demonstrating that she was damaged as a proximate result of Hendricks's negligence. While appellant mistakenly labels this motion as a Civ.R. 12(B)(6) motion, it is clear that the judgment requested was not based solely on the pleadings, but was based on plaintiff's failure to produce evidence at trial. Accordingly, we will analyze the motion as a motion for a directed verdict under Civ.R. 50.

When a motion for a directed verdict is made and denied at the close of the plaintiff's evidence, such motion must be renewed at the close of all the evidence or, absent a manifest miscarriage of justice, errors regarding sufficiency of the evidence are waived. *Neiswender v. Edinger* (1978), 59 Ohio App.2d 25, 27, 13 O.O.3d 96, 97, 392 N.E.2d 580, 581–582. After being denied her motion for a directed verdict at the close of the plaintiff's evidence, appellant failed to renew her motion at the close of all of the evidence.

█ Even if the appellant had properly renewed her motion, however, we could not say that the plaintiff produced insufficient evidence for the case to go to the jury. In ruling on a motion for a directed verdict:

"The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different

conclusions, the motion must be denied." *Posin v. A.B.C. Motor Court Hotel* (1976), 45 Ohio St.2d 271, 275, 74 O.O.2d 427, 429–430, 344 N.E.2d 334, 338.

Upon review of the record, it is clear that, viewing the evidence most strongly in favor of the plaintiff, reasonable minds could reach different conclusions regarding whether appellant acted negligently and whether the plaintiff suffered injury as a proximate result of such negligence. Accordingly, the second assignment of error is overruled.

### Assignment of Error III

"The trial court's award of prejudgment interest is contrary to law."

Hendricks contends that the trial court's award of prejudgment interest should be reversed because a separate hearing was not conducted for presentation of evidence regarding prejudgment interest and because the trial court judge issued the award based solely on the record, although she had not presided over any pretrial or status conferences prior to trial.

. R.C. 1343.03(C) provides for an award of prejudgment interest, stating:

"Interest on the judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."

After the jury returned its verdict, counsel for the plaintiff requested an award of prejudgment interest. The court ruled on the prejudgment interest motion, allowing both Hendricks and the plaintiff's attorney to argue their positions.

As appellant failed to object to the procedure followed in arriving at the prejudgment interest award at a time when such error could have been remedied by the trial court, that issue has not been preserved for appeal. Furthermore, an award of prejudgment interest is within the sound discretion of the trial court and, therefore, should not be overruled absent a clear abuse of discretion. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126–127, 482 N.E.2d 1248, 1251–1252.

"An abuse of discretion involves far more than a difference in opinion. The term discretion itself involves the idea of choice, of an exercise of will, of a determination made between competing considerations. In order to have an 'abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but the

perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." *Id.*, quoting *State v. Jenkins* (1984), 15 Ohio St.3d 164, 222, 15 OBR 311, 360–361, 473 N.E.2d 264, 313–314.

Upon review of the record, we are unable to find such an abuse of discretion. Appellant's third assignment of error is overruled.

### Assignment of Error IV

"The trial court's statements in the presence of the jury demonstrated bias and judgment that effectively denied defendant-appellant a fair and impartial trial."

Hendricks claims that statements made by the trial court judge during the course of trial proceedings prejudiced her right to a fair trial. Specifically, Hendricks cites the transcript for thirteen examples of statements evidencing the trial judge's "bias," while stating that the actual number of instances were "too numerous to list." Upon review of the entire transcript, we are unpersuaded that the judge's comments were of such a nature to demonstrate bias and warrant reversal.

"In a trial before a jury, the court's participation by questioning or comment must be scrupulously limited, lest the court, consciously or unconsciously, indicate to the jury its opinion on the evidence or on the credibility of a witness." *State ex rel. Wise v. Chand* (1970), 21 Ohio St.2d 113, 50 O.O.2d 322, 256 N.E.2d 613, paragraph three of the syllabus.

In the case *sub judice*, the incidents of which appellant complains occurred as a result of the trial court's attempts to regulate appellant's opening statement and her later presentation of evidence to conform with courtroom procedure. There is no indication that the conduct of the trial judge impinged upon appellant's credibility or the weight to be given the evidence which she offered. The fact that the trial court's admonitions to appellant might have reflected upon her competency as a trial attorney was an unavoidable consequence of appellant's choice to represent herself in a legal malpractice action. Accordingly, we are unpersuaded that the trial court committed error in failing to scrupulously limit her statements so as to ensure a fair trial. Appellant's fourth assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

REECE, P.J., and DICKINSON, J., concur.