JOURNAL ENTRY AND OPINION
This case came to be heard upon the accelerated calendar pursuant to App.R. 11.1 and Local Rule 25, the record from the Cuyahoga County Court of Common Pleas, the briefs and the oral arguments of counsel. Defendants-appellants West Oak Construction, et al., (collectively "defendants") appeal the decision of the trial court granting prejudgment interest to plaintiff-appellee Eleanora Carroccio ("plaintiff")
Plaintiff was a resident of the Oakwood Estates apartment complex. Defendant-West Oak is a construction company that signed a contract with defendant-Oakwood Estates to build additional apartment buildings at the Oakwood Estates complex. In early 1995, West Oak was building an apartment building adjacent to the parking lot which provided plaintiff's sole means of ingress and egress. West Oak used this parking lot as an access road to its construction site and as a result, construction vehicles periodically drove across the lot.
On April 14, 1995, plaintiff and her daughter, who lived with plaintiff, were leaving the apartment complex when plaintiff sustained her injury. Plaintiff was carrying two bags of trash to her car because the trash receptacle was not next to her building. She intended to put the trash in her trunk then drive to the trash receptacle on her way out. Plaintiff, who uses a walker, reached her car and set the walker aside. She placed the trash in her trunk and when she reached to pull her walker back towards herself, the walker became stuck on a piece of mud "the size of a dime." This caused her to lose her balance, fall and fracture her hip.
Nationwide Mutual Insurance Company is defendants' insurance carrier, so they investigated the claim. Sharon Woodward conducted the investigation on behalf of Nationwide. Woodward inspected the scene and interviewed several witnesses from the site who aided plaintiff after she fell. Woodward took photographs and also recorded a statement from plaintiff. In this statement, plaintiff informed Woodward that she and her daughter had complained about the condition of the parking lot to the apartment manager on a monthly basis.
On May 23, 1996, Nationwide held a meeting to discuss plaintiff's claim. The meeting's participants, all Nationwide employees and agents, concluded there was no liability on the part of defendants and thus no settlement offer would be made to plaintiff.
Subsequently, plaintiff filed her complaint against Oakwood Estates and West Oak Construction. Discovery commenced and defendants took plaintiff's deposition. Defendants filed motions for summary judgment arguing the muddy condition in the parking lot was "open and obvious" and thus liability did not exist. The trial court denied both motions and the case proceeded to trial. At the conclusion of the trial, the jury returned a verdict in favor of plaintiff in the amount of $90,000. However, the jury found that plaintiff was 20% negligent and defendants were only 80% negligent, so the verdict was reduced by 20% or $18,000, to $72,000.
Plaintiff then filed a post-judgment motion for prejudgment interest arguing defendants never made any settlement offer even though the trial court denied both of defendants' motions for summary judgment. Defendants countered by filing a brief in opposition to plaintiff's motion for prejudgment interest. In their brief, defendants argued there was significant dispute with respect to negligence as evidenced by the fact that the jury found plaintiff to be 20% responsible for her injury. Further, defendants maintained plaintiff's lowest settlement demand of $100,000 clearly exceeded the actual value of the case at $72,000.
A hearing was held on the matter. Walter Hartsock was called as a witness by the plaintiff and testified on cross-examination that he is a claims attorney for Nationwide Insurance and he has the authority to make settlement offers. He stated he never made an offer because he believed there was no defect in the parking lot. Hartsock admitted he was aware that plaintiff had given the landlord verbal notice of hazardous condition of the parking lot prior to her accident. He testified further that defendant-West Oak is a construction company and that the "open and obvious" doctrine does not apply to them. Lastly, Hartsock commented on the defendants' exposure if the case went to trial and said, "[i]f the jury determined that the plaintiff was completely free of negligence, that's what our estimate would have been; somewhere from $100,000 to $150,000."
On direct examination, Hartsock said the parking lot was checked for debris on the day of the accident. He also stated he was aware that plaintiff had prior medical conditions that made her "shaky on her feet." In making his decision not to make a settlement offer, Hartsock testified he relied on Woodward's investigation which showed very little debris in the parking lot and no defects, the conclusion of others at Nationwide that no liability existed, and plaintiff's deposition testimony where she stated there were no large clumps of mud in the parking lot which were dangerous. Hartsock also stated the apartment manager, who is responsible for receiving complaints, indicated plaintiff did not give prior verbal notice of the dangerous condition of the parking lot. However, he explained this employee left the landlord's employment and was not available to testify at trial.
On re-cross examination, Hartsock stated he was aware the apartment manager was not available as a witness two years before the trial began. Woodward and another Nationwide employee also testified for defendants but their testimony was uneventful.
The trial court issued findings of fact and conclusions of law and granted plaintiff's motion for prejudgment interest. The trial court found "that defendants failed to negotiate in good faith toward a settlement and that plaintiff made good faith efforts to settle the case." In reaching this decision, the trial court stated it considered the four part test annunciated in Kalain v. Smith (1986), 25 Ohio St.3d 157. The trial court reasoned:
 "With regard to that criteria, the Court finds that both parties cooperated in discovery proceedings and neither attempted to unnecessarily delay the trial. With regard to the other two criteria, the Court finds that the defendants failed to rationally evaluate the risks and potential liability and failed to make any offer of settlement, which, in light of the facts presented in motion practice amounted to a failure to negotiate in good faith.
 Defendants could not present an objectively reasonable belief that they had no liability. Documents presented at the prejudgment hearing indicate that they had no witness to rebut plaintiff's claim, made orally and repeatedly when paying her rent, that the mud in the parking lot from the construction vehicles was making it difficult for her to leave her apartment. (Plaintiff's Exhibit 6). No other reasonable means of egress presented itself. Defendant's employers and/or agents witnessed the fall, and plaintiff's broken hip was diagnosed shortly thereafter. Plaintiff's brief delay in seeking medical treatment in order to complete her food stamp application is evidence of her stoicism and desperate financial straits, not relevant to the issue of proximate cause of the injury to the fall.
 The demand and final verdict to [sic] constitute circumstantial evidence of a party's reasonable settlement offers, even though that information, standing alone, is not conclusive. Loder v. Burger
(1996), 113 Ohio App.3d 669."
It is from this order which defendants timely filed their notice of appeal. Defendants submitted a single assignment of error for consideration which states:
 THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING PLAINTIFF'S MOTION FOR PREJUDGMENT INTEREST.
Defendants claim they had a good faith, objectively reasonable belief that they had no liability and thus did not have to make a monetary settlement. In support of this argument defendants cite the investigation conducted by Woodward, plaintiff's deposition testimony that there was no defect, and plaintiff's prior medical condition that made her shaky on her feet. In addition, defendants maintain they cooperated fully in discovery and did not delay discovery. Lastly, defendants argue the trial court abused its discretion by making inaccurate and biased statements during the hearing. The testimony defendants refer to is: (1) the trial court stated it was going to sanction Hartsock if he did not appear on time, (2) the trial court interrupted Hartsock's testimony concerning a defect in the parking lot and Hartsock's claim that plaintiff should not have been taking the garbage out, (3) the trial court's statement that plaintiff's daughter had leukemia when in reality she did not, and (4) the trial court's findings of fact that a pretrial conference was held on February 23 when no such pretrial conference occurred.
Ohio's prejudgment interest statute, R.C. 1343.03 (C). states:
 "Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."
The party seeking prejudgment interest bears the burden of showing that the other party failed to make a good faith effort to settle the case. Moskovitz v. Mt. Sinai Med. Ctr.
(1994), 69 Ohio St.3d 638, 659. The trial court is granted broad discretion in rendering a decision on this matter. Huffman v.Hair Surgeon, Inc. (1985), 19 Ohio St.3d 83, 87. Accordingly, a reviewing court is limited to determining whether the trial court abused the discretion it has been granted.Mobberly v. Hendricks (1994), 98 Ohio App.3d 839, 845. A judgment awarding or denying a party's motion for prejudgment interest will not be reversed absent an affirmative showing that the underlying decision is not supported by some competent, credible evidence. See Loder, supra.
The Supreme Court of Ohio has set forth factors to which a trial court and reviewing court must look to determine whether prejudgment interest should be granted: did the party (1) fully cooperate with discovery, (2) rationally evaluate risks and potential liability, (3) not attempt to delay the proceedings unnecessarily, and (4) make a good faith monetary settlement offer or respond in good faith to an offer from the other party.Kalain, supra. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer. Id.
In the instant case, defendants fully cooperated with discovery and did not delay the proceedings unnecessarily. The record reveals defendants did not make any settlement offer throughout the entire proceeding. Plaintiff made an initial settlement offer of $125,000 and later reduced that offer to $100,000. At the hearing, Hartsock admitted that he knew, prior to trial, that if the case went to trial a jury would likely return a verdict somewhere between $100,000 and $150,000. Moreover, plaintiff put defendants on notice regarding the dangerous condition of the parking lot prior to her accident, thus substantiating her negligence action. Defendants allege they had a witness to rebut this testimony, but the witness was unavailable for trial. However, defendants conceded they knew this witness would be unavailable two years prior to the commencement of the trial. Also, defendants filed two motions for summary judgment arguing the "open and obvious" doctrine precluded liability. Subsequently, both of these motions were denied. Lastly, defendants were aware that the "open and obvious" doctrine applies in the landlord-tenant relationship so it would not have protected defendant-West Oak, a construction company, even if it were applicable.
Regarding defendants' arguments, we find they do not mitigate the above-mentioned evidence. Even though Woodward's investigation was thorough, the denial of the motions for summary judgment and plaintiff's deposition testimony about notifying defendants of the dangerous condition of the parking lot should have indicated to defendants the case may go to trial. In light of these facts and Hartsock stating defendants' exposure was between $100,000-$150,000 if the case went to trial, defendants failed to rationally evaluate the risks and potential liability and did not make a good faith settlement offer. In addition, we find the trial court was not biased and was merely asking factual questions of the witness, Hartsock.
Lastly, defendant does not demonstrate how the inaccuracies in the record were prejudicial. The trial court erroneously stated plaintiff's daughter had leukemia. This misstatement was immediately corrected by Hartsock when he testified "I am not aware of a daughter being treated for leukemia." This correction was also noted in the trial court's next statement when it said "[s]he was disabled herself," which was the actual condition of plaintiff's daughter.
Defendants also argue the trial court either distorted the facts or confused this case with another case when it stated, in its findings of fact and conclusions of law, that a February 23, 1998, pre-trial conference was held and that the trial court informed defendants their refusal to make a settlement offer amounted to lack of good faith. Defendants are correct in arguing the trial court erred in stating a pre-trial conference was held on February 23, 1998. However, this does not amount to prejudice, it is merely a misstatement in the record by the trial court. This case had been previously dismissed and re-filed on June 4, 1997. In the previous case, a pretrial conference was held, on May 15, 1997, with the trial court present. Defendants refused to make a settlement offer at this pre-trial conference as evidenced in a letter from Nationwide employee Denise Wokum to Hartsock where Wokum wrote "* * * on May 15, 1997, the final pretrial was held in this matter. Plaintiff's settlement demand remained at $125,000 and our settlement offer remained at zero. Plaintiff made a motion to continue * * * Judge Cleary denied the motion." This nonsettlement policy continued in the present case as well, as evidenced by Wokum's testimony where she stated Nationwide's position was consistent throughout the case, that no offer would be made. Thus, although the trial court confused the February 23, 1998, with an earlier pre-trial conference, the fact remains that a good faith settlement offer was never made by defendants. As a result, the trial court's misstatement regarding the dates of the pre-trial conference was not prejudicial because the substance of the finding, that defendants did not make a good faith settlement offer, was correct.
Accordingly, we find the trial court did not abuse its discretion in granting plaintiff's motion for prejudgment interest. Defendants' sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellants her costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
LEO M. SPELLACY, J. KENNETH A. ROCCO, J. CONCUR.
 _________________________ JOHN T. PATTON PRESIDING JUDGE